## Young *v.* Freeman, Appellant.

Argued October 31, 1932. Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Abraham L. Freedman,* and with him *Wolf, Block, Schorr and Solis-Cohen,* for appellant.

*Allen Grant,* and with him *William W. McKim,* for appellee.

OPINION BY CUNNINGHAM, J., January 25, 1933:

About midnight, September 3, 1929, Elsie R. Young, Gertrude A. Guldner, and Nan Geegan, were riding as guests in a Chevrolet sedan automobile, owned and operated by Harvey R. Freeman; while traveling south on St. Martins Lane, Philadelphia, the car overturned and the passengers were injuted. Contending their injuries were caused by Freeman's negligent operation of his car, each brought an action against him in the municipal court of the County of Philadelphia, but we are now concerned only with the suit in which Elsie R. Young was plaintiff. She recovered a verdict for $1,000 and the defendant has appealed from the judgment entered thereon. Binding instructions were requested by both sides; the trial judge submitted the case to the jury and the court subsequently dismissed defendant's motions for a new trial and for judgment n. o. v.

Defendant offered no testimony; by the testimony of plaintiff and her witnesses these material facts were shown. The three young ladies had dinner as the guests of defendant at his apartment, 35th Street and Powelton Avenue, and about eleven o'clock went for a ride, in his car and at his invitation, without having any particular purpose or destination in view. Defendant drove through Fairmount Park and Chestnut Hill to the outskirts of Norristown; Miss Geegan sat with him in the front, and plaintiff and Miss Guldner

occupied the rear, seat. In the vicinity of Norristown they turned and started back toward Philadelphia; coming through Chestnut Hill, defendant drove south on St. Martins Lane. At the foot of a seven per cent. descending grade on that street it is intersected, but not crossed, by Gravers Lane, running northeast and southwest and entering St. Martins at an angle of approximately 60°, and there is a curve in St. Martins Lane just beyond the intersection; each street is thirty-six feet wide.

Plaintiff's description of the accident reads: "As we were coming down the hill on St. Martins Lane you could feel the car picking up speed and I asked Mr. Freeman previously at least two or three times not to drive so fast and I had no more than uttered the words when I felt the car going first to one side of the road and then the other and then it overturned and that was the accident." There was no testimony showing the speed of the car, in miles per hour, but plaintiff testified defendant "was driving very fast" and several times while going toward Norristown, and at least twice on the way back, she protested and asked him to drive slower but he paid no attention to her demands; she was corroborated in this by her companions.

Miss Geegan said: "Well, we came down there, that hill there and we seemed to be approaching a stone wall going down right at the curve, just seemed to push head on into it, and to avoid going into the wall, he [defendant] quickly turned the car to the side, he made a turn this way and then made a turn to the left and went over, turned around again and I don't know what happened after that; the car just seemed to spin around like a top and go over."

There was abundant evidence from which a jury could reasonably find that defendant did not have his car under proper control while descending the grade on St. Martins Lane. His negligence was not seriously

contested. The defense urged below, and here, was that the testimony of plaintiff and her witnesses convicted her of contributory negligence, as a matter of law, in that she remained in the car, after an opportunity to alight, although she knew it was being operated in a reckless manner and that her protests were not availing. The testimony upon which counsel for defendant rely in support of this contention, reads: "Q. Did you have occasion to complain to Mr. Freeman of his driving on your way out, on your way into Norristown? A. Yes, he was driving very fast...... Q. Did you stop at Ambler or the outskirts of Norristown? A. That is where we turned. Q. Did you stop there? A. Yes. Q. Did you get out of the automobile? A. No. Q. You complained to Mr. Freeman about his driving I assume then before you stopped, then the car was stopped and turned around to go back on your return trip, that is correct is it not? A. Yes. Q. You knew at that time that he had been driving very recklessly, didn't you? A. I knew because he was driving very fast, I was getting frightened about it. Q. I assume he was driving very recklessly practically the whole way into Norristown? A. Yes, he was."

It is quite true that one in the situation of this plaintiff may be guilty of contributory negligence in failing to get out of an automobile when the driver persists, despite protests and warnings, in operating it at a dangerous rate of speed, but the duty to alight is not absolute. The evidence must disclose that a reasonable opportunity to withdraw has been afforded and the question whether the failure to leave the vehicle amounted to a lack of ordinary care must necessarily depend upon the circumstances in each particular case. The contention in behalf of this defendant is that it was the duty of the trial judge to declare, as a matter of law, that plaintiff should have gotten out of the car

when it stopped momentarily at Ambler for the purpose of turning around for the return journey. The principles of law do not go that far; the inferences of plaintiff's negligence were not "clear beyond peradventure"; the most defendant was entitled to was to have the question of her contributory negligence submitted to the jury.

Complaint is made of the manner in which this question was submitted by the trial judge, but we are not convinced that it is well founded. After stating the general rule, to which we have referred, the trial judge said that common sense must be used in its application and then continued: "For instance, does it mean that these three young women should have gotten out of that automobile when they were, according to their testimony, in a part of Pennsylvania, Montgomery County, at the small hours of the morning, and get home the best way they could?" The charge contained a strong intimation from the trial judge that, in his opinion, the failure of plaintiff, under all the circumstances, to leave the car should not be permitted to defeat her right to recover, but the question was not taken from the jury.

Another assignment is based upon the use of this language in the charge: "The doctor has not said whether the union of the bones was good or bad, but you know from your common sense, and the court will so charge you, that once a bone is broken it is not as good as it was before, and that is a matter you must take into consideration." This remark was made immediately following a summary of the medical testimony relative to the extent of plaintiff's injuries and the amount of her hospital and doctor bills.

She was earning wages of approximately $30 a week, and as a result of her injuries, consisting of a broken collar bone and six fractured ribs, was disabled for some months. It is not contended the verdict is ex-

cessive, and we are not persuaded that the remark, although not based upon any evidence in the case, should be considered as constituting reversible error.

Being of opinion that the case was necessarily for the jury and finding no reversible trial errors, we overrule all the assignments of error.

Judgment affirmed.